UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
:
HENRY PLATSKY, :
:
:
Plaintiff, : 20 Civ. 573 (JPC) (SN)
-v- :
:
FEDERAL BUREAU OF INVESTIGATION, :
:
Defendants. :
:
------------------------------------------------------------- X

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2525
Fax: (212) 637-2730
Email: ilan.stein@usdoj.gov

ILAN STEIN
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY...................................................................... 2

ARGUMENT .................................................................................................................................. 5

    A.    Legal Standards................................................................................................. 5

    B.    The FBI's Search for Records Related to Plaintiff's First Request Was Reasonable and Adequate, and Located No Responsive Records in the FBI's Possession, Custody, or Control .............................................................................. 7

        1.    Standards Governing FOIA Searches .......................................................... 8

        2.    The FBI Conducted A Reasonable and Adequate Search for Records Concerning Any Watch Lists on Which Plaintiff's Name Appears .......... 8

    C.    The FBI Properly Provided *Glomar* Responses to Plaintiff's Requests for Watch List Information ........................................................................................ 10

        1.    Standards Governing the *Glomar* Response ............................................ 10

        2.    The FBI Properly Provided *Glomar* Responses Pursuant to FOIA Exemption 7(E) ....................................................................................... 11

        3.    Plaintiff Lacks Standing to Challenge Watch Lists' Constitutionality ..... 13

CONCLUSION............................................................................................................................. 15

**TABLE OF AUTHORITIES**

CASES

*A. Michael's Piano, Inc. v. FTC*,
    18 F.3d 138 (2d Cir. 1994) ............................................................................................. 6

*ACLU v. FBI*,
    59 F. Supp. 3d 584 (S.D.N.Y. 2014) ............................................................................ 5-6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................ 6

*Asian Law Caucus v. U.S. Dep't of Homeland Sec.*,
    2008 WL 5047839 (N.D. Cal. Nov. 24, 2008) ............................................................. 12

*Bishop v. U.S. Dep't of Homeland Sec.*,
    45 F. Supp. 3d 380 (S.D.N.Y. 2014) ............................................................................ 11

*Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*,
    649 F. Supp. 2d 262 (S.D.N.Y. 2009) ............................................................................ 8

*Caraveo v. EEOC*,
    96 F. App'x 738 (2d Cir. 2004) ...................................................................................... 5

*Carney v. U.S. Dep't of Justice*,
    19 F.3d 807 (2d Cir. 1994) ......................................................................................... 6, 7

*FBI v. Abramson*,
    456 U.S. 615 (1982) ........................................................................................................ 6

*Fox News Network, LLC v. United States Dep't of the Treasury*,
    739 F. Supp. 2d 515 (S.D.N.Y. 2010) ............................................................................ 6

*Garcia v. U.S. Dep't of Justice*,
    181 F. Supp. 2d 356 (S.D.N.Y. 2002) ......................................................................... 8, 9

*Gardels v. CIA*,
    689 F.2d 1100 (D.C. Cir. 1982) .................................................................................... 10

*Grand Cent. P'ship, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999) .................................................................................. 5, 7, 8

*Halperin v. CIA*,
    629 F.2d 144 (D.C. Cir. 1980) ....................................................................................... 7

*Hedges v. Obama*,
   724 F.3d 170 (2d Cir. 2013) ............................................................................................... 14

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ............................................................................................................ 6

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ............................................................................................ 7

*Long v. Office of Pers. Mgmt.*,
   692 F.3d 185 (2d Cir. 2012) ................................................................................................ 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................................ 6

*Minier v. CIA*,
   88 F.3d 796 (9th Cir. 1996) ................................................................................................ 7

*N.Y. Times Co. v. U.S. Dep't of Justice*,
   756 F.3d 100 (2d Cir. 2014) ................................................................................................ 8

*N.Y. Times Co. v. U.S. Dep't of Justice*,
   872 F. Supp. 2d 309 (S.D.N.Y. 2012) ................................................................................. 2

*N.Y. Times v. U.S. Dep't of Justice*,
   101 F. Supp. 3d 310 (S.D.N.Y. 2015) ................................................................................. 6

*Phillippi v. CIA*,
   546 F.2d 1009 (D.C. Cir. 1976) ........................................................................................ 10

*Platsky v. FDA*,
   2014 WL 7391611 (E.D.N.Y. Dec. 24, 2014) ................................................................. 8, 9

*Platsky v. Nat'l Sec. Agency*,
   2013 WL 12121950 (E.D.N.Y. Jan. 30, 2013) .................................................................... 2

*Platsky v. Nat'l Sec. Agency*,
   2016 WL 3661534 (S.D.N.Y. July 1, 2016) ....................................................................... 2

*Platsky v. Nat'l Sec. Agency*,
   2017 WL 4052235 (2d Cir. July 17, 2017) ......................................................................... 2

*Platsky v. Nat'l Sec. Agency*,
   547 F. App'x 81 (2d Cir. 2013) .............................................................................. 2, 10, 14

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998) .......................................................................................................... 6

*Wilner v. Nat'l Sec. Agency*,
   592 F.3d 60 (2d Cir. 2009) ..................................................................................................... 7, 10

**STATUTES**

5 U.S.C. § 552 ............................................................................................................................ *passim*


**REGULATIONS**

28 C.F.R. § 16.96 ................................................................................................................................ 9

## PRELIMINARY STATEMENT

Defendant Federal Bureau of Investigation ("FBI"), by its attorney, Audrey Strauss, Acting United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff Henry Platsky ("Plaintiff"), proceeding *pro se*, seeks to compel the production of records from the FBI under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). His suit arises from two FOIA requests that Plaintiff submitted separately to the FBI. He submitted the first on July 17, 2018, seeking to ascertain whether his name was present on any FBI watch lists relating to an alleged meeting in 1990 between representatives of the FBI and New York City law enforcement and emergency services. He submitted the second on October 7, 2018, to determine whether his name appeared on any FBI watch lists from 1990-1991. In response, the FBI searched its databases for responsive records and then issued *Glomar* responses, neither confirming nor denying Plaintiff's presence on any FBI watch lists.

The Court should grant summary judgment in favor of the FBI, which conducted a reasonable search for records responsive to Plaintiff's first request and then issued *Glomar* responses, which are the FBI's standard responses to requests relating to an individual's presence on FBI watch lists. Those responses were appropriate insofar as information confirming or denying an individual's placement on a watch list is exempt from disclosure under FOIA exemption 7(E), 5 U.S.C. § 552(b)(7)(E), as such information was compiled for law enforcement purposes and would reveal protected law enforcement techniques.[1]

---

[1] This is the third FOIA lawsuit of which this Office is aware in which Plaintiff has sought similar information, albeit for different time-periods. In 2011, Plaintiff commenced a similar action in the U.S. District Court for the Eastern District of New York regarding three 2010 FOIA

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff submitted two FOIA requests, dated July 17, 2018, and October 7, 2018, to the FBI. *See* Declaration of Michael G. Seidel ("Seidel Decl.") ¶¶ 5, 7 & Ex. A, C.[2] In the first, Plaintiff sought to "know if [his] name was on any watch-lists brought by the FBI" related to an alleged meeting "that the FBI set up with what were then three New York City emergency service departments in the run-up to the 1st Gulf War in 1990." *See id.* Ex. A (hereinafter, "First Request").

In response to the First Request, the FBI's Record/Information Dissemination Section ("RIDS") conducted a search of the agency's principal databases—the Central Records System ("CRS") and Sentinel—for records that contained Plaintiff's name, "Henry Platsky." Seidel Decl. ¶ 28. Sentinel "is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012" and that "provides a web-based interface to FBI users." *Id.* ¶ 18. And the CRS "is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of

---

requests that sought the same type of information—documents containing Plaintiff's name, dating from a five-year period starting January 1, 2005—from the FBI, National Security Agency, and Central Intelligence Agency. The district court in that case approved Defendants' *Glomar* responses and granted summary judgment in their favor, *see Platsky v. Nat'l Sec. Agency*, No. 11 Civ. 4816 (SLT) (RLM), 2013 WL 12121950 (E.D.N.Y. Jan. 30, 2013), and the Second Circuit affirmed, *Platsky v. Nat'l Sec. Agency*, 547 F. App'x 81 (2d Cir. 2013) (summary order). In 2015, Plaintiff filed another action against the same three agencies that sought the same type of information: documents containing Plaintiff's name, this time for the five-year period starting January 1, 2000. The district court there approved Defendants' *Glomar* responses and granted summary judgment in their favor, *see Platsky v. Nat'l Sec. Agency*, No. 15 Civ. 1529 (ALC), 2016 WL 3661534 (S.D.N.Y. July 1, 2016), and the Second Circuit again affirmed, *Platsky v. Nat'l Sec. Agency*, 2017 WL 4052235 (2d Cir. July 17, 2017) (granting summary affirmance of the district court's order after concluding that the appeal "lacks an arguable basis in law or in fact").

[2] "The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required." *N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (brackets and internal quotation marks omitted).

fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel functions." *Id.* ¶ 12. The system is organized in a numerical sequence of files organized according to subject matter. *Id.* ¶ 13. Information contained within the CRS is indexed in a manner that "allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties." *Id.* ¶ 14. The indices "are arranged in alphabetical order and comprise an index on a variety of subject matters . . . ." *Id.* Information may be indexed "by individual (persons), by organization (organizational entities, places, and things), and by event (*e.g.*, a terrorist attack or bank robbery)." *Id.* ¶ 15.

The mechanism that the FBI uses to search the CRS is the Automated Case Support ("ACS") system, which is intended to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its myriad missions and functions. *Id.* ¶ 16. The Universal Index ("UNI") is the automated index of the CRS, which provides all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching. *Id.* ¶ 17.

As a result of the FBI's search for potentially responsive documents in ACS and Sentinel, as well as in manual indices maintained by FBI Headquarters and the New York Field Office, it located two files determined to be potentially responsive to Plaintiff's request insofar as they contained Plaintiff's name. *Id.* ¶¶ 25, 28. Both files had previously been sent to NARA. *Id.* ¶ 28. Therefore, the FBI determined that it did not have any responsive documents in its possession, custody, or control. *Id.*

The FBI responded to Plaintiff on August 6, 2018, informing him that "[a] search of the Central Records System maintained at FBI Headquarters indicated that records potentially

3

responsive to the FOIA . . . had previously been sent to the National Archives and Records Administration (NARA)" and that, because the FBI no longer had custody of the documents, his request was "being administratively closed." *Id.* Ex. B. It further noted that, "[s]ince these records were not reviewed, it is not known if they are actually responsive to the FOIA/FOIPA [request]," and that if Plaintiff wished to review the potentially responsive records, he should send his request to NARA. *Id.* Finally, the FBI advised, "per standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) . . . , this response neither confirms nor denies the existence of your subject's name on any watch lists." *Id.*

In the second request, dated October 7, 2018, Plaintiff wrote that he had contacted NARA seeking the records that the FBI had identified as potentially responsive in its initial response, but that these records were "not what [he was] seeking." *Id.* Ex. C (hereinafter, "Second Request"). He then articulated a new request: to ascertain whether "the FBI [has] any Watch Lists from the years 1990-1991 that contain [his] name[.]" *Id.* The FBI responded on October 31, 2018, by refusing, consistent with the *Glomar* doctrine, to confirm or deny whether Plaintiff (or anyone else) was on any watch list. *Id.* Ex. D.[3] It explained: "If the U.S. Government revealed who was listed on any government watch list, terrorists would be able to take actions to avoid detection by government authorities." *Id.* "Thus, by standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) . . . , this response neither confirms nor denies the existence of your subject's name on any watch lists." *Id.*

---

[3] The FBI did not conduct a search of its records because (1) Plaintiff's second request, unlike the first, "did not refer to any specific meeting or other incident and instead broadly sought to ascertain whether Plaintiff's name appeared on FBI watch lists," a "broad request" to which "the only proper response" is a *Glomar* response, and (2) the FBI "had already searched for records containing Plaintiff's name and did not find any records in its possession, custody, or control." Seidel Decl. ¶ 8 fn. 4.

4

On January 15, 2019,[4] Plaintiff filed an administrative appeal of the Second Request. *Id.* ¶ 9, Ex. E. By letter dated August 2, 2019, the FBI Office of Information Policy ("OIP") informed Plaintiff that it affirmed the FBI's response to his Second Request. *Id.* ¶ 10, Ex. F. It further informed him that the FBI had properly refused to confirm or deny the existence of any records concerning any individual's placement on any government watch list because their existence is protected from disclosure pursuant to 5 U.S.C. § 552a(j)(2) and 5 U.S.C. § 552(b)(7)(E). *Id.*

Plaintiff filed his complaint in this action on January 21, 2020, challenging the FBI's response to his Second Request.[5] Compl. 10-11.[6]

## ARGUMENT

### A.  Legal Standards

"FOIA was enacted to promote honest and open government and to . . . advance a general philosophy of full agency disclosure." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (internal quotation marks omitted). At the same time, FOIA is intended to "strike[] 'a workable balance between the right of the public to know and the need of the Government to keep information in confidence.'" *ACLU v. FBI*, 59 F. Supp. 3d 584, 588 (S.D.N.Y. 2014) (quoting

---

[4] Plaintiff's letter appealing the FBI's response to his Second Request is dated January 15, 2018, but it should have been dated January 15, 2019. The Office of Information Policy received the letter on January 28, 2019. *See* Seidel Decl. Ex. E.

[5] It does not appear that Plaintiff is challenging the FBI's response to his first FOIA request in this action. To the extent that the Court construes the Complaint as challenging that response, that challenge fails because Plaintiff has not alleged that he exhausted his administrative remedies with respect to that request. *See generally* Compl. Plaintiff, in fact, never filed an administrative appeal of the FBI's response to that initial request. *See* Seidel Decl. ¶¶ 5-6. Any claim related to that request therefore fails. *See Caraveo v. EEOC*, 96 F. App'x 738, 741 (2d Cir. 2004) (summary order) (affirming dismissal of FOIA case because plaintiff failed to allege that he had exhausted administrative remedies).

[6] Plaintiff did not number every paragraph in the Complaint. For the Court's convenience, this memorandum references the page numbers, rather than the paragraphs, on which cited material can be found in the Complaint.

5

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)); *see also A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994) (FOIA exemptions "reflect Congress' recognition that releasing certain records might prejudice legitimate private or governmental interests" (citing *FBI v. Abramson*, 456 U.S. 615, 621 (1982))). "FOIA requires a federal agency to disclose records in its possession unless they fall under one of nine enumerated and exclusive exemptions." *N.Y. Times v. U.S. Dep't of Justice*, 101 F. Supp. 3d 310, 317 (S.D.N.Y. 2015); *see also* 5 U.S.C. § 552(a)-(b).

Summary judgment is the "preferred" procedural vehicle by which most FOIA claims are resolved. *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 532 (S.D.N.Y. 2010); *see N.Y. Times*, 101 F. Supp. 3d at 317; *see also Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) ("In resolving summary judgment motions in FOIA cases, a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence . . . ."). Under Rule 56(c), summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The moving party bears the burden of showing that it is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party, however, may not rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Long*, 692 F.3d at 190 (quoting *Carney v. U.S. Dep't of*

*Justice*, 19 F.3d 807, 812 (2d Cir. 1994)). An agency may satisfy its burden of demonstrating an adequate search through "[a]ffidavits and declarations supplying facts indicating that the agency has conducted a thorough search." *Carney*, 19 F.3d at 812 (footnote omitted). Similarly, summary judgment as to the applicability of a FOIA exemption is "warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)); *see Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980).

The presumption of good faith accorded to affidavits submitted by an agency "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Grand Cent. P'ship*, 166 F.3d at 489 (internal quotation marks and citations omitted). Thus, a court may award summary judgment if the affidavits provided by the agency are "adequate on their face." *Carney*, 19 F.3d at 812. "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner*, 592 F.3d at 73 (quoting *Larson*, 565 F.3d at 862). Moreover, "[i]n evaluating an agency's *Glomar* response, a court must accord 'substantial weight to the agency's affidavits.'" *Id.* (quoting *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996)).

    **B.    The FBI's Search for Records Related to Plaintiff's First Request Was Reasonable and Adequate, and Located No Responsive Records in the FBI's Possession, Custody, or Control**

In response to Plaintiff's First Request, the FBI conducted a search that was reasonably designed to identify responsive records. That search did not yield any responsive documents in the FBI's possession. Plaintiff does not specifically challenge the adequacy of that search, nor could he in light of the comprehensive searches that the FBI ran. In addition, Plaintiff did not administratively appeal the FBI's response to his First Request, so he cannot challenge it now.

7

*See* 5 U.S.C. § 552(a)(6) (requiring administrative appeal of adverse determination). Even if Plaintiff could raise such a challenge, it would fail as the FBI conducted an adequate search.

### 1. Standards Governing FOIA Searches

An agency's search for records is considered "adequate" if it was "reasonably calculated to discover" documents responsive to the FOIA request. *Grand Cent. P'ship*, 166 F.3d at 489. "The adequacy of a search is not measured by its results, but rather by its method." *N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014). "If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue." *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002). "Reasonableness does not demand perfection, and a reasonable search need not uncover every document extant." *Platsky v. FDA*, No. 13 Civ. 6250 (SLT) (RLM), 2014 WL 7391611, at *4 (E.D.N.Y. Dec. 24, 2014) (quoting *Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009), *aff'd*, 601 F.3d 143 (2d Cir. 2010)). In short, an agency is not expected to "take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents." *Garcia*, 181 F. Supp. 2d at 368 (internal quotation marks omitted).

### 2. The FBI Conducted A Reasonable and Adequate Search for Records Concerning Any Watch Lists on Which Plaintiff's Name Appears

Plaintiff's First Request sought information regarding the inclusion of Plaintiff's name on any FBI watch lists relating to an alleged meeting between FBI representatives and "New York City emergency service departments" that took place "in the run-up to the 1st Gulf War." Seidel Decl. ¶ 7 & Ex. A.

In response, the FBI conducted a search of the agency's principal databases—the Central Records System ("CRS") and Sentinel—for records that contained Plaintiff's name, "Henry

8

Platsky." Seidel Decl. ¶ 28. As a result of the FBI's search in ACS and Sentinel, as well as in manual indices maintained by FBI Headquarters and the New York Field Office, it located two files determined to be potentially responsive to Plaintiff's request in that Plaintiff's name appeared in those files. *Id.* ¶¶ 25, 28. Both had previously been sent to NARA and were no longer in the FBI's possession. *Id.* ¶ 28. Therefore, the FBI determined that it did not have any responsive documents in its possession, custody, or control, *id.*, and informed Plaintiff that if he wished to search those documents, he should contact NARA, *id.* Ex. B.[7]

The FBI's declaration demonstrates that the FBI's "search was reasonably calculated to uncover all relevant documents." *Platsky*, 2014 WL 7391611, at *4 (internal quotation marks omitted). Given CRS's "comprehensive nature and scope," it "is the principal records system searched by RIDS[] to locate information responsive to most FOIPA requests," particularly where—as here—the requests seek information about individuals. *Id.* ¶ 29. Index searches of the CRS are reasonably expected to locate responsive material within the CRS since the FBI indexes pertinent information into the CRS to facilitate retrieval based on operational necessity. *Id.* ¶ 27. Because Plaintiff's request sough "information about Henry Platsky, such information would reasonably be expected to be located in the CRS via the index search methodology." *Id.* ¶ 29.

For these reasons, the FBI's search was "reasonably designed to identify and locate responsive documents," and was therefore adequate. *See Garcia*, 181 F. Supp. 2d at 368.

---

[7] Even if the FBI had identified responsive watch-list records in its possession, those documents would be exempt from disclosure pursuant to 5 U.S.C. § 552a(j)(2), insofar as the records would relate to "investigative matters that are part of the FBI's primary law enforcement mission." Seidel Decl. ¶¶ 30-31; *see also* 28 C.F.R. § 16.96.

9

### C. The FBI Properly Provided *Glomar* Responses to Plaintiff's Requests for Watch List Information

Pursuant to the *Glomar* doctrine, the FBI properly declined to confirm or deny whether or not it has watch-list records concerning Plaintiff, as the existence or nonexistence of such records is itself exempt from disclosure under FOIA exemption 7(E). *See Wilner*, 592 F.3d at 68. The Second Circuit previously upheld the FBI's *Glomar* response to an earlier set of FOIA requests submitted by Plaintiff. *See Platsky*, 547 F. App'x at 82. Because here, too, the FBI properly provided *Glomar* responses to the extent Plaintiff's requests sought information exempt from disclosure under FOIA, the FBI is once again entitled to summary judgment.

#### 1. Standards Governing the *Glomar* Response

In some instances, an agency's acknowledgment of whether records do or do not exist "would cause harm cognizable under a FOIA exception." *Wilner*, 592 F.3d at 68 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982) (brackets omitted)). In such a case, the agency may respond to a FOIA request with a *Glomar* response,[8] whereby the agency "may refuse to confirm or deny the existence of records." *Id.* In employing a *Glomar* response, "an agency must 'tether' its refusal to respond to one of the nine FOIA exemptions." *Id.* (citation omitted).

As detailed below, the FBI properly provided *Glomar* responses to Plaintiff's FOIA requests because the existence or nonexistence of records concerning Plaintiff would reveal protected information regarding law enforcement techniques, which is exempt under FOIA exemption 7(E).

---

[8] "The *Glomar* doctrine originated in a FOIA case concerning records pertaining to the Hughes Glomar Explorer, an oceanic research vessel." *Wilner*, 592 F.3d at 67 (citing *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976)). There, the CIA responded to a FOIA request by asserting that "in the interest of national security, involvement by the U.S. government in the activities which are the subject matter of plaintiff's request can neither be confirmed nor denied." *Id.* (quoting *Phillippi*, 546 F.2d at 1012 (brackets omitted)).

### 2. The FBI Properly Provided *Glomar* Responses Pursuant to FOIA Exemption 7(E)

The FBI provided *Glomar* responses to the Plaintiff's requests for information reflecting that he had been placed on a government watch list, as this information is protected under FOIA exemption 7(E), 5 U.S.C. § 552(b)(7)(E). Seidel Decl. ¶ 32. FOIA exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," provided that such records or information fall into one of six categories, including that the production of records would disclose "techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E).

First, watch list-related information is clearly "compiled for law enforcement purposes" under exemption 7. The FBI's mission includes investigating violations of federal law not exclusively assigned to another agency, conducting investigations and activities to protect the United States from terrorism and threats to national security, and furthering the foreign intelligence objectives of the United States. Seidel Decl. ¶ 36. The FBI's records concerning watch lists "were compiled and created in furtherance of the FBI's law enforcement, national security, and intelligence missions." *Id.* "Specifically, information contained on the terrorist watch list is used as a method and technique that has enabled the FBI to perform its core law enforcement and national security missions." *Id.*

Second, information regarding the identities of individuals on government watch lists would reveal a protected law enforcement technique or procedure. A law enforcement technique or procedure may be protected, even if it is generally known to the public, if the disclosure of details of the technique or procedure could reduce its effectiveness. *Bishop v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 391 (S.D.N.Y. 2014). *See* Seidel Decl. ¶ 38. In the case of government watch lists, acknowledgment of the existence or nonexistence of responsive records

11

concerning whether particular individuals are on a watch list may cause substantial harm to the law enforcement, investigative, and intelligence-gathering interests of the FBI. *Id.* ¶ 39.

Confirming or denying an individual's presence on a watch list "could enable the targets of the watch list to avoid detection or to develop countermeasures to circumvent the ability of the FBI to effectively use this important law enforcement technique." *Id.* It could "heighten an individual's suspicion, inducing him or her to more closely scrutinize activities and associations, which in turn would compromise highly sensitive methods and sources." *Id.* ¶ 41. "Such official confirmation could, in turn, induce an individual to flee, destroy or hide evidence, alter his or her own behavior, or it may cause his or her close associates to alter their behaviors in order to avoid detection by law enforcement." *Id.* In addition, production of this information could lead to analyze patterns and in doing so to ascertain the specific criteria for individuals' nomination to no-fly lists or other watch lists; those criteria cannot be made public without compromising intelligence and security or inviting subversion of these lists by individuals who may adjust their behavior to avoid being identified as a threat to aviation. *Id.* ¶ 40; *see also Asian Law Caucus v. U.S. Dep't of Homeland Sec.*, No. 08 Civ. 842 (CW), 2008 WL 5047839, at *4 (N.D. Cal. Nov. 24, 2008) (rejecting challenge to agency's withholding of watch list information under exemption 7(E)). Accordingly, confirming any individual's watch-list status reasonably could be expected to compromise investigative operations as well as endanger investigative or intelligence sources and methods. Seidel Decl. ¶ 41.

Furthermore, the FBI cannot issue a *Glomar* response only in response to certain parties' requests, because such differential treatment could itself be telling. *Id.* ¶ 42. "Moreover, as pieces of information about who is or is not (or may or may not be) on a watch list becomes known, adversaries can begin to construct a picture of what types of behavior are pertinent to placement

on a watch list and the extent to which the government is aware of adversaries and their activities." *Id.* Armed with such information, they could then "develop countermeasures to conceal their activities and thwart efforts to interdict crime and protect the national security of the United States." *Id.* The FBI must use the *Glomar* response consistently to avoid disclosure of law enforcement techniques and procedures, regardless of whether the FBI, in fact, possesses records responsive to a particular request. *Id.* Simply put, "a consistent, across-the-board *Glomar* response . . . to all first-party [FOIA] requests . . . is the best way of ensuring that the harms discussed above do not occur." *Id.*

For these reasons, the FBI properly provided *Glomar* responses under exemption 7(E), as disclosure of the inclusion or non-inclusion of specific individuals, including Plaintiff, on a government watch list would reveal protected information concerning the FBI's law enforcement techniques and procedures.

### 3. Plaintiff Lacks Standing to Challenge Watch Lists' Constitutionality

In his Complaint, Plaintiff asserts that "watch-lists are unconstitutional." Compl. 3. Plaintiff does not advance a standalone claim challenging watch lists' constitutionality, so this Court need not address the claim.[9] In any event, any such claim would fail because Plaintiff lacks standing to challenge the constitutionality of the watch lists. Simply put, the Complaint includes

---

[9] Plaintiff also asserts that because his "request concerned information compiled over 25 years before [he filed his request,] that information can no longer be classified according to Executive Order #13526, Section 1.5(b)." Compl. 3. To the extent Plaintiff advances that argument as a basis to challenge the FBI's responses to his FOIA requests, his argument fails. Indeed, Plaintiff has not even alleged that the requested information was classified under Executive Order 13526. In addition, Executive Order 13526 does not affect the FBI's *Glomar* response at issue in this case: The FBI issued that response not because the information was classified but because its divulgence would disclose "techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). Exemption 7(E) is unaffected by Executive Order 13526 and contains no time limitation on its protection for statutorily exempt documents.

no allegations that Plaintiff was, in fact, placed on FBI watch lists, much less that his presence on any such list has resulted in concrete harm. In a case that Plaintiff has previously brought against the FBI asserting similar claims, the Second Circuit affirmed the district court's conclusion that Plaintiff lacked standing to challenge the watch lists' constitutionality:

> [W]e agree with the District Court's determination that Platsky does not have standing, because he appears to be claiming a hypothetical and speculative injury. . . . Platsky does not allege that he has in fact been put on an FBI watch list, or even that he has been inordinately subjected to heightened searches while traveling, which could raise a plausible inference that he had been placed on such a list. Accordingly, he does not have standing to assert a due process claim.

*Platsky v. Nat'l Sec. Agency*, 547 F. App'x 81, 82 (2d Cir. Dec. 16, 2013). Here, Plaintiff again appears to challenge watch lists' constitutionality, yet he does not allege any facts demonstrating that he has suffered any injury. Thus, even if the Court construes the Complaint to include a challenge to the constitutionality of watch lists, it should dismiss that claim for lack of standing. *See id.* (citing *Hedges v. Obama*, 724 F.3d 170, 188 (2d Cir. 2013)).[10]

\*   \*   \*

The Second Circuit has already rejected a similar challenge by Plaintiff to the FBI's response to a similar set of FOIA requests. *Platsky*, 547 F. App'x at 82 (affirming the district court's holding that . . . the FBI properly tethered its *Glomar* response to Exemption 7(E), which protects information compiled for law enforcement purposes"). Because the undisputed facts in the record establish that the FBI's responses to Plaintiff's current set of FOIA requests were likewise proper, the Court should grant summary judgment in the FBI's favor.

---

[10] The Second Circuit also noted that "[e]ven if Platsky had an articulable injury, a FOIA request would not be the proper means to bring a due process challenge" to alleged placement on a watch list. *Platsky*, 547 F. App'x at 83 n.1.

**CONCLUSION**

For the foregoing reasons, the FBI respectfully request that the Court grant summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, and dismiss Plaintiff's complaint.

Dated: October 23, 2020
      New York, New York

                                         AUDREY STRAUSS
                                         Acting United States Attorney for the
                                         Southern District of New York
                                         *Attorney for Defendant*

By:    <u>/s/ Ilan Stein</u>

                                         ILAN STEIN
                                         Assistant United States Attorney
                                         86 Chambers Street, 3rd Floor
                                         New York, New York 10007
                                         Tel.: (212) 637-2525
                                         Fax: (212) 637-2730
                                         Email: ilan.stein@usdoj.gov