UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                              :

HENRY PLATSKY,                            :

                      Plaintiff,           :

                                  :        20 Civ. 573 (JPC)
          -v-                       :
                                  :        OPINION
FEDERAL BUREAU OF INVESTIGATION,   :        AND ORDER

                    Defendant.        :

------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       This action is *pro se* plaintiff Henry Platsky's third attempt to use the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to uncover whether his name once appeared on a Federal Bureau of Investigation ("FBI") watch list. *See Platsky v. Nat'l Sec. Agency*, No. 15 Civ. 1529 (ALC), 2016 WL 3661534 (S.D.N.Y. July 1, 2016), *aff'd*, 2017 WL 4052235 (2d Cir. July 17, 2017); *Platsky v. Nat'l Sec. Agency*, No. 11 Civ. 4816 (SLT), 2013 WL 12121950 (E.D.N.Y. Jan. 30, 2013), *aff'd*, 547 F. App'x 81 (2d Cir. 2013). In Platsky's previous actions, the court granted summary judgment for the defendants and held that the FBI acted properly when it denied Platsky's requests. *Platsky*, 2016 WL 3661534, at *7; *Platsky*, 2013 WL 12121950, at *4.

       Platsky now again endeavors to determine whether his name was previously on an FBI watch list, albeit for a different time period than his first two actions. The FBI responded to Platsky's FOIA request with what is known as a *Glomar* response, by which the agency neither confirmed nor denied the existence of the requested records. Before the Court are cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The FBI argues that it adequately searched for Platsky's requested records and properly invoked a FOIA exception.

For the reasons set forth below, the Court agrees and grants the FBI's motion.

## I. Background

### A. Factual Background

By letter dated July 17, 2018, Platsky sent a FOIA request to the FBI. Dkt. 24 ("Seidel Declaration" or "Seidel Decl."), Exh. A. He requested information as to whether his "name was on any watch-lists brought by the FBI" to "a meeting that the FBI set up with what were then three New York City emergency service departments in the run-up to the 1st Gulf War in 1990." *Id.* In the letter, Platsky alleged that "[t]he purpose of the meeting was to set up a Joint Anti-Terrorism Task Force" between the FBI, the New York City Police Department, the New York City Fire Department, and the "Emergency Medical Service." *Id.*

The FBI responded by letter dated August 6, 2018. Seidel Decl., Exh. B at 1. The agency informed Platsky that it searched the "Central Records System maintained at FBI Headquarters" and discovered that "records potentially responsive" to Platsky's request had been sent to the National Archives and Records Administration ("NARA"). *Id.* The FBI explained that "[s]ince these records were not reviewed, it [was] not known if they [were] actually responsive" to Platsky's request. *Id.* The FBI provided Platsky with file numbers for the records and directed Platsky to contact NARA if he wished to review them. *Id.* The FBI's letter also advised Platsky that pursuant to FOIA Exemption (7)(E), 5 U.S.C. § 552(b)(7)(E), and Privacy Act Exemption (j)(2), *id.* § 552a(j)(2), the letter response "neither confirm[ed] nor denie[d] the existence of [Platsky's] name on any watch lists." Seidel Decl., Exh. B at 1.

By letter dated October 7, 2018, Platsky told the FBI that he contacted NARA but that the file numbers corresponded to records "that [were] not what [he] [was] seeking." Seidel Decl., Exh. C. He therefore "reformulate[d]" his request by posing the following question to the FBI: "Does

2

the FBI have any Watch Lists from the years 1990-1991 that contain my name?" *Id.* The FBI replied to this by letter dated October 31, 2018. Seidel Decl., Exh. D at 1. It stated that "the U.S. Government can neither confirm nor deny whether a particular person is on any terrorist watch list." *Id.* The FBI explained its reasoning further:

> Maintaining the confidentiality of government watch lists is necessary to achieve the objectives of the U.S. Government, as well as to protect the privacy of individuals who may be on a watch list for a limited time and later removed. If the U.S. Government revealed who was listed on any government watch list, terrorists would be able to take actions to avoid detection by government authorities.

*Id.* The FBI again cited FOIA Exemption (7)(E), 5 U.S.C. § 552(b)(7)(e), and Privacy Act Exemption (j)(2), *id.* § 552a(j)(2), and explained that its response "neither confirm[ed] nor denie[d] the existence of [Platsky's] name on any watch lists." Seidel Decl., Exh. D at 1.

On January 15, 2019[1], Platsky filed an administrative appeal. Seidel Decl., Exh. E. The FBI Office of Information Policy affirmed the FBI's response to Platsky's request. Seidel Decl., Exh. F. It noted that the "FBI properly refused to confirm or deny the existence of any records concerning an individual's placement on any government watch list because their existence is protected from disclosure" pursuant to FOIA Exemption (7)(E). *Id.* at 1.

**B. Procedural History**

On January 21, 2020, Platsky initiated this action by filing a complaint against the FBI. Dkt. 2 ("Complaint" or "Compl."). In the Complaint, Platsky challenges the FBI's response to his FOIA request. *See id.* at 3, 9. He also contends that watch lists are unconstitutional and, specifically, that his inclusion on a watch list violates his right to due process. *See id.* at 3-4. Platsky asks the Court to order that the FBI acknowledge his placement on their watch lists and to remove him from any such lists, among other relief.

---

[1] Platsky's letter was incorrectly dated January 15, 2018.

This case was initially assigned to the Honorable Louis L. Stanton. On March 31, 2020, Judge Stanton dismissed Platsky's due process claim for lack of standing, explaining that Platsky failed to "plausibly suggest that authorities placed [him] on a watch list." Dkt. 4 at 7. Judge Stanton also relied on the Second Circuit's reasoning in an earlier case in which it affirmed the district court's determination that Platsky lacked standing to bring a nearly identical constitutional claim. *Id.* at 6 (quoting *Platsky v. Nat'l Sec. Agency*, 547 F. App'x 81, 82-83 (2d Cir. 2013)).

The FBI filed an answer on June 17, 2020. Dkt. 11. The case was reassigned to the Honorable J. Paul Oetken on June 23, 2020, and was subsequently reassigned to the undersigned on September 29, 2020. On October 23, 2020, the FBI moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. 22. It also filed a memorandum of law in support of its motion, Dkt. 23 ("FBI Motion"), and a Declaration from Michael G. Seidel, Section Chief of the Record/Information Dissemination Section within the Information Management Division of the FBI, Seidel Decl. Platsky submitted an opposition brief, which the Court also treats as a cross-motion for summary judgment, dated December 30, 2020. Dkt. 29-1 ("Platsky Opposition"). The FBI filed a reply brief on January 20, 2021. Dkt. 30 ("FBI Reply"). Platsky submitted a reply dated February 15, 2021 in support of his cross-motion. Dkt. 32 ("Platsky Reply").[2]

## II. Legal Standard

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to

---

[2] The FBI initially contended that Platsky made two separate FOIA requests, one on July 17, 2018 and one on October 7, 2018. FBI Motion at 2. And the agency argued that Platsky did not file an administrative appeal as to his first request. *Id.* at 5, 7. However, it later conceded that "the two letters [Platsky] submitted relate to a single FOIA request" and agreed that Platsky "exhausted his administrative remedies as to both letters." FBI Reply at 1 n.1.

the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (internal quotation marks omitted). However, "'Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information,' and therefore provided the 'specific exemptions under which disclosure could be refused.'" *Id.* (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)). "FOIA thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Platsky*, 2016 WL 3661534, at *3 (emphasis omitted) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)).

"[S]ummary judgment is the preferred procedural vehicle for resolving FOIA disputes." *Bloomberg L.P. v. Bd. of Governors of Fed. Rsrv. Sys.*, 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009). "As with all motions for summary judgment, summary judgment in a FOIA action should be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see also* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"In resolving summary judgment motions in a FOIA case, a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence." *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012); *accord N.Y. Times Co. v. U.S. Dep't of Just.*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) ("[T]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required." (alteration in original) (internal quotation marks omitted)). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir.

5

2009) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* (quoting *Larson*, 565 F.3d at 862).

Finally, "[a] *pro se* party's submissions are to be read liberally, a requirement that is especially strong in the summary judgment context, where a *pro se* plaintiff's claims are subject to a final dismissal." *Platsky*, 2013 WL 12121950, at *2 (alteration in original) (quoting *Ferguson v. Bizzario*, No. 09 Civ. 8106 (PKC), 2010 WL 4227298, at *3 (S.D.N.Y. Oct. 19, 2020)); *accord Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016).

### III. Discussion

### A. FOIA Claim

#### 1. Adequacy of Searches

"If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue." *Garcia v. U.S. Dep't of Just., Off. of Info. & Priv.*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002). Platsky does not appear to challenge the adequacy of the FBI's searches with regard to his FOIA request. Still, the FBI filed the Seidel Declaration, which explains the searches conducted and the FBI's grounds for refusing to confirm or deny the existence of certain records. The Court has reviewed the Seidel Declaration. Based on this declaration's descriptions of the searches performed, the Court grants summary judgment in favor of the FBI on this issue.

#### 2. *Glomar* Responses

Under the *Glomar* doctrine—which traces its origins to *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976), a case involving a ship called the *Hughes Glomar Explorer*—"an agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause

harm cognizable under a[] FOIA exception." *Wilner*, 592 F.3d at 68 (alteration in original) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). "To properly employ the *Glomar* response to a FOIA request, an agency must tether its refusal to respond to one of the nine FOIA exemptions." *Platsky*, 2016 WL 3661534, at *4 (quoting *Wilner*, 592 F.3d at 68). "[I]n other words, a government agency may refuse to confirm or deny the existence of certain records if the FOIA exemption would itself preclude the *acknowledgement* of such documents." *Id.* (alteration and emphasis in original) (quoting *Wilner*, 592 F.3d at 68).

"An agency 'resisting disclosure' of the requested records 'has the burden of proving the applicability of an exemption.'" *Wilner*, 592 F.3d at 68 (*Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996)). "The agency may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemptions." *Platsky*, 2016 WL 3661534, at *4 (quoting *Wilner*, 592 F.3d at 68). "A responsive affidavit should 'explain[] in as much detail as possible the basis for [the agency's] claim that it can be required neither to confirm nor to deny the existence of the requested records.'" *Wilner*, 592 F.3d at 68 (alterations in original) (quoting *Phillippi*, 546 F.2d at 1013). "In evaluating an agency's *Glomar* response, a court must accord substantial weight to the agency's affidavits, provided that the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of bad faith." *Platsky*, 2016 WL 3661534, at *4 (quoting *Wilner*, 592 F.3d at 68).

Here, the FBI tethered its *Glomar* response to FOIA Exemption (7)(E). Seidel Decl. ¶ 32. This exemption applies to "records or information compiled for law enforcement purposes" that if made public "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C.

7

§ 552(b)(7)(E). "Under Exemption (7)(E), [c]ourts have 'set[] a relatively low bar for [an] agency to justify withholding.'" *Clevenger v. U.S. Dep't of Just.*, No. 18 Civ. 1568 (LB), 2020 WL 1846565, at *13 (E.D.N.Y. Apr. 3, 2020) (second and third alterations in original) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)).

The FBI explained that "the consolidated Terrorist Watch List is one of the most effective counterterrorism and law enforcement tools available to the U.S .Government" because it allows "front-line screening agencies to positively identify known or suspected terrorists trying to obtain visas, enter the country, board aircraft, or engage in other activity." Seidel Decl. ¶ 33. Further, the FBI stated that "[g]iven the sensitive information contained in the watch list, the mere acknowledgement of the existence or non-existence of responsive records would trigger harm." *Id.* ¶ 39. And "[r]evealing this fact alone could enable the targets of the watch list to avoid detection or to develop countermeasures to circumvent the ability of the FBI to effectively use this important law enforcement technique, therefore, allowing circumvention of the law." *Id.* Moreover, the FBI asserted that "to confirm [Platsky's] or any individual's watch list status reasonably could be expected to compromise investigative operations as well as endanger investigative or intelligence sources or methods." *Id.* ¶ 41. For example, the FBI claimed that "[s]uch official confirmation could, in turn, induce an individual to flee, destroy or hide evidence, alter his or her own behavior, or it may cause his or her close associates to alter their behaviors in order to avoid detection by law enforcement." *Id.*

In addition, the FBI explained that "[i]t is not sufficient for the FBI to issue a *Glomar* response to individuals in response to only certain requests (for example, those requests by individuals who are on a watch list), because that differential treatment could itself be telling." *Id.* ¶ 42. Therefore, "the government has determined that a consistent, across-the-board *Glomar*

response—pursuant to . . . FOIA Exemption [](7)(E)—to all first-party requests" under FOIA "neither confirming nor denying an individual's watch list status," is the best way of ensuring that these harms do not occur. *Id.*

The FBI's response to Platsky's FOIA request was proper. The agency properly tethered its *Glomar* response to FOIA Exemption 7(E) by refusing to confirm or deny the existence of the requested information. Summary judgment in favor of the FBI is thus warranted because the agency's affidavit "describe[s] the justification[] for nondisclosure with reasonably specific detail, demonstrate[s] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner*, 592 F.3d at 73.

In reaching this conclusion, the Court is persuaded by the well-reasoned opinions of the Honorable Andrew L. Carter, Jr., *Platsky*, 2016 WL 3661534, at *7, and the Honorable Sandra L. Townes, *Platsky*, 2013 WL 12121950, at *4, which rejected nearly identical FOIA claims brought by Platsky. In affirming Judge Townes's decision granting summary judgment for the FBI, the Second Circuit held that "the FBI properly tethered its *Glomar* response to Exemption (7)(E), which protects information compiled for law enforcement purposes." *Platsky*, 547 F. App'x at 82. This Court sees no reason why the outcome here should be any different. Indeed, courts around the country routinely grant summary judgment in favor of the FBI when the agency issues a *Glomar* response tethered to FOIA Exemption 7(E) in response to a request for information regarding watch lists. *See Morgan v. FBI*, No. 15-CA-1255 (SS), 2016 WL 7443397, at *4 (W.D. Tex. May 24, 2016) ("[T]he FBI properly responded to [the plaintiff's] request for her personal FBI records by refusing to confirm or deny whether her name appeared on a watch list pursuant to Exemption (7)(E)."); *Kalu v. IRS*, 159 F. Supp. 3d 16, 22 (D.D.C. 2016) ("[T]he [FBI's] *Glomar* response to

Plaintiff's presence or non-presence on any FBI watch list is justified under Exemption (7)(E).").

Platsky's arguments to the contrary easily fail. He says that the FBI has not "made clear how revealing a name on a watch-list would reveal law enforcement techniques and procedures" because "[a] name on its own does not tell anyone how the name came upon the watch-list." Platsky Opposition at 4. He also alleges that "it is hard to believe that the law enforc[ement] techniques of thir[ty] years ago and today have much in common." *Id.* These arguments "do not overcome the reasoning provided by the FBI for issuing a *Glomar* response." *Platsky*, 2013 WL 12121950, at *4. As discussed above, the FBI explained in detail that disclosing an individual's watch list status "reasonably could be expected to compromise investigative operations as well as endanger investigative or intelligence sources and methods." Seidel Decl. ¶ 41. Accordingly, and in line with several courts in this Circuit who have considered Platsky's past FOIA claims, the Court concludes that the FBI has established that it properly responded to Platsky's FOIA request for information about whether his name appeared on a watch list in 1990 or 1991 by refusing to confirm or deny such information pursuant to FOIA Exemption (7)(E). *See Platsky*, 547 F. App'x at 82; *Platsky*, 2016 WL 3661534, at *7; *Platsky*, 2013 WL 12121950, at *4.

**B. Constitutional Claims**

Platsky also argues that watch lists are unconstitutional and violate his right to due process. *See* Compl. ¶ 5; Platsky Opposition at 5. For this argument, Platsky relies entirely on *Elhady v. Kable*, 391 F. Supp. 3d 562 (E.D. Va. 2019), *rev'd*, 993 F.3d 208 (4th Cir. 2021), which held that the Terrorist Screening Database failed "to provide constitutionally sufficient procedural due process" and thus violated the Administrative Procedure Act, *id.* at 584-85. Compl. ¶ 5; Platsky Opposition at 5; Platsky Reply at 1. The Fourth Circuit recently reversed the district court's decision, held that the plaintiffs' procedural due process claims failed, and instructed the district

court to enter judgment in favor of the government. *Elhady v. Kable*, 993 F.3d 208, 229-30 (4th Cir. 2021). Thus, *Elhady* offers no help to Platsky.

In all events, the Court reads Judge Stanton's well-reasoned opinion filed earlier in this action as dismissing any constitutional claims advanced by Platsky. *See* Dkt. 4 at 5-7. However, Platsky continues to advance his argument that watch lists are unconstitutional. *See* Platsky Opposition at 5. To the extent that Judge Stanton's opinion did not resolve these claims, the Court dismisses any remaining constitutional claims for lack of standing.

In an earlier case, the Second Circuit addressed "Platsky's argument that the FBI may not, consistent with due process, place him or any citizen on a terrorist watch list without notice and an opportunity to be heard." *Platsky*, 547 F. App'x at 82. "The irreducible constitutional minimum [of standing] requires that (1) the plaintiff have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) the injury be fairly traceable to the challenged action of the defendant, and (3) it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Hedges v. Obama*, 724 F.3d 170, 188 (2d Cir. 2013) (internal quotation marks and footnotes omitted). The Second Circuit previously held that Platsky did not have standing to advance a nearly identical claim because he did not allege "that he has in fact been put on an FBI watch list, or even that he has been inordinately subjected to heightened searches while traveling, which could raise a plausible inference that he had been placed on such a list." *Platsky*, 547 F. App'x at 82. So too here. Platsky does not have standing to assert a due process claim regarding the constitutionality of government watch lists. And moreover, even if he did, "a FOIA request would not be the proper means to bring a due process challenge." *Id.* at 83 n.1. Thus to the extent that Platsky's constitutional claims remain, the Court dismisses them and grants summary

judgment in favor of the FBI.

## IV. Conclusion

For the reasons stated, the FBI's motion for summary judgment is granted and Platsky's motion for summary judgment is denied. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 22, enter judgment for the FBI, and close this case.

The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to Platsky.

SO ORDERED.

Dated: July 2, 2021
New York, New York

_____
JOHN P. CRONAN
United States District Judge